**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

AEROTEK AFFILIATED SERVICES, INC. f/k/a AEROTEK, INC.,

Plaintiff,

v.

ALEX MOORE,

Defendant.

CIVIL ACTION NO: 1:22-cv-02522-WMR

# ORDER

This matter is before the Court on Plaintiff Aerotek Affiliated Services, Inc.'s Motion for Partial Summary Judgment [Doc. 57] and Defendant Alex Moore's Motion for Summary Judgement [Doc. 63]. Upon consideration of the parties' arguments, the applicable law, and all appropriate matters of the record, the Court **DENIES** both motions for the reasons set forth below.

## I. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Teagan v. City of McDonough*, 949 F.3d 670, 675 (11th Cir. 2020). The

moving party bears the burden of showing the absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After a motion for summary judgment has been properly supported, the nonmovant must present affirmative evidence that demonstrates the presence of "a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

In reviewing a motion for summary judgment, a court should view the facts and all reasonable inferences from those facts in the light most favorable to the nonmovant. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). In addition, the court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir. 2000). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1991) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion

on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).

## II. DISCUSSION

While the parties have asserted various claims against each other during this litigation, the sole remaining claim is Aerotek's claim against Moore for his alleged breach of Paragraph 7 of his Employment Agreement. Therefore, the Court considers only the facts relevant to that claim.[1]

### A. Relevant Facts

Moore began working for Aerotek, a recruiting and staffing agency, in January of 2013. At the beginning of his employment, Moore entered into the Employment Agreement with Aerotek which contains several provisions related to the confidentiality and security of Aerotek's information. [Doc. 63-2 at ¶1; Doc. 73 at ¶1; Doc. 57-4]. Relevant here, Paragraph 7 of the Employment Agreement

---

[1] The Court acknowledges that Moore, in his response to Aerotek's motion for summary judgment, has made Rule 37 objections to the declarations of two previously undisclosed witnesses for Aerotek—Maximo Herman and Alisha Zhang. As the Court is not granting Aerotek's motion, its failure to timely disclose these witnesses is deemed harmless for the purposes of summary judgment. Should Moore wish to depose these witnesses or seek to offer rebuttal evidence at trial the Court will, upon proper motion, consider reopening discovery for this limited purpose.

required that Moore return Aerotek's records and property upon the termination of his employment. Specifically, Paragraph 7 states:

> 7. RETURN AND PRESERVATION OF RECORDS: EMPLOYEE agrees, upon termination of EMPLOYEE'S employment with AEROTEK for any reason whatsoever, to return to AEROTEK all records and other property (whether on paper, computer discs or in some other form), copies of records, and papers belonging or pertaining to AEROTEK (collectively "Company Records"). EMPLOYEE further agrees not to engage in the unauthorized destruction or deletion of Company Records during employment or upon termination of employment, including, without limitation, the deletion of electronic files, data, records or e-mails.

[Doc. 57-4 at 9 (agreement p. 8), ¶7].

The Employment Agreement also addresses the remedies and damages available to Aerotek in the event of a breach. For example, Paragraph 14 states:

> 14. ATTORNEYS' FEES: Should AEROTEK sue to enforce this Agreement or to seek damages or injunctive relief for EMPLOYEE'S breach of this Agreement, and AEROTEK is the prevailing party in such suit, AEROTEK shall be entitled to recover its attorneys' fees and costs incurred in connection with such suit.

[*Id.* at 12 (agreement p. 11), ¶14].

Paragraph 15 of the Employment Agreement provides that the terms of the Employment Agreement survive assignment of the Employment Agreement to an Affiliate of Aerotek. Paragraph 15 provides, in pertinent part:

> 15. ENTIRE AGREEMENT: . . . EMPLOYEE agrees that AEROTEK may assign this Agreement to any Affiliate, or to any transferee of all or substantially all of the assets of AEROTEK, and hereby consents to any such assignment, which shall not, in and of itself, constitute a termination of EMPLOYEE's employment

> hereunder. EMPLOYEE agrees that this Agreement may be enforced by AEROTEK's assignees without need of any further authorization or agreement from EMPLOYEE. The parties hereto understand that this Agreement shall remain in effect notwithstanding any job change or job assignment by EMPLOYEE within or between AEROTEK or its Affiliates. . . .

[*Id*. at 12–13 (agreement pp. 11–12), ¶15]. Lastly, the Employment Agreement is to be governed by, construed, and enforced in accordance with Maryland law. [*Id*. at 11 (agreement p. 10), ¶10].

While at Aerotek, Moore was responsible for assisting clients with requisitions and candidate placements, developing business relationships with clients and prospective clients, and managing Aerotek employees. [Doc. 58-1 at 18:18-24, 57:14-22]. For use during his employment, Moore was given access to Aerotek's password protected company databases containing information about Aerotek's clients and prospective clients, job placement candidates, business development tools and activities, and Aerotek's sales metrics and other financial information. [*Id*. at 21:6–23:2; *see also* Doc. 59-1 at 170:3-7, 179:15–180:8, 181:4-20].

The evidence is disputed as to whether Moore continued working for Aerotek after July 2021. Moore claims that he left Aerotek in July 2021 and began working for Actalent, Inc., who he asserts is a separate and distinct entity that existed before July 2021. [Doc. 63-2 at ¶¶9–12; Doc. 73 at ¶¶9–12]. Aerotek, on the other hand, contends that Aerotek underwent a transition in 2021–2022 whereby it split into

three affiliated recruiting brands—Aerotek, Actalent, and Aston Carter—each with distinct industry focuses. [Doc. 72-2 at ¶4; Doc. 59-1 at 21:11–17, 44:21–45:12, 157:8-13; Doc 58-1 at 63:19–64:5]. Aerotek claims that, after the "branding split," the three companies remained closely affiliated and shared both clients and financial and client-related information in databases accessible across the different business units. [Doc. 72-2 at ¶6; Doc. 59-1 at 168:13-17; 173:9–174:1]. However, there is some evidence that Aerotek and Actalent were separate corporations with different officers. [*See* Doc. 59-1 at 16:11–17:13, 25:21–27:20, 41:6–43:8; Doc. 63-6 (Ex. 4 – Kyle Mitchell LinkedIn Profile listing distinct employments at Aerotek and Actalent); Doc. 63-7 (Ex. 5 – Aerotek Articles of Amendment); Doc. 63-8 (Ex. 6 – Actalent Articles of Amendment); Doc. 63-9 at 3–4 (Ex. 7 – copy of complaint in another lawsuit listing Aerotek and Actalent as separate plaintiffs in case caption and stating in paragraph 1 that Aerotek, Actalent, and other entities were separate corporations).

Moore contends that he gave notice of his resignation to Actalent in August of 2021 and that his last day at Actalent was September 17, 2021. [Doc. 63-2 at ¶¶13–15; *see also* Doc. 59-1 at 28:7–29:14]. But Aerotek claims that Moore remained an employee of Aerotek up until the effective date of his resignation on September 17, 2021. [Doc. 72-2 at ¶¶7–10]. Upon his resignation, Moore began

working for Jobot, LLC, a direct competitor of Aerotek. [Doc. 58-1 at 103:4–104:11, 124:8–125:1].

Sometime after Moore left to go work for Jobot, Aerotek hired a third-party forensics firm, KLDiscovery ("KLD"), to examine Moore's work laptop computer. [Doc. 60-1 at 24:5-20]. After its examination, KLD determined that between August 17–23, 2021, certain files had been downloaded onto a USB flash-drive device. [Doc. 57-6 at ¶10]. The downloaded files included Aerotek's current client list and a prospective customer list. [*Id*. at ¶¶11–12]. Moore does not dispute that he had that particular USB flash-drive device in his possession or that he had connected it to his laptop. [Doc. 58-1 at 163:11-16, 164:7-14]. Moore further admits that he never returned anything to Aerotek other than his laptop upon his departure. [Doc. 58-1 at 191:7–192:2, 214:20-22].

In this lawsuit, the crux of Aerotek's breach of contract claim is that Moore violated Paragraph 7 of his Employment Agreement by failing to return the electronic files (business information and records) on the USB flash-drive device upon the termination of his employment at Aerotek. In response, Moore contends that he could not have violated Paragraph 7 of the Employment Agreement because the obligation to return any records is triggered only "upon termination of EMPLOYEE's employment with AEROTEK" and, at the time his employment with Aerotek ended in July 2021, the alleged copying of files had not yet occurred. In

other words, he contends that the alleged copying of files to the USB flash-drive device occurred only after he became an employee of Actalent and no longer bound by the Employment Agreement.

Based on the evidence referenced above, the Court finds that there is a genuine dispute of fact as to whether Moore was an employee of Aerotek or, instead, Actalent at the time of the alleged copying of the files. Furthermore, the Court finds that there is also a genuine dispute of fact as to whether Aerotek and Actalent were affiliated corporations or, instead, separate and distinct entities at the time of the alleged copying of the files. The Court will not weigh the conflicting evidence or make credibility determinations to determine these issues on motion for summary judgment. The jury is best suited to determine these issues as part of its overall consideration of the issue of liability for the alleged breach of the Employment Agreement.

**B. STANDING**

Moore also argues that he is entitled to summary judgment because Aerotek does not have standing to assert a claim for breach of contract. Specifically, he argues that Aerotek has no evidence of any injury in fact sufficient to confer standing and, therefore, this Court lacks subject matter jurisdiction. Moore's position is that, even if Aerotek established that Moore breached the Employment Agreement,

Aerotek cannot show it suffered any damages beyond nominal damages and attorneys' fees.

However, under both Maryland and Georgia law, it is not necessary in a breach of contract action that a plaintiff prove actual damages resulting from the breach, as he may recover nominal damages for the breach when he has failed to prove actual damages. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001) (citations omitted); *Kleban v. Eghrari-Sabet*,174 Md. App. 60, 95 (2007) (citations omitted); *6428 Church Street, LLC v. SM Corrigan, LLC*, 352 Ga. App. 437, 444 (2019) (citation omitted). Moore has not identified any cases in which a Maryland court or a federal court interpreting Maryland law has found that a plaintiff did not have standing to assert a breach of contract claim where the plaintiff asserted harm from the breach but could not establish actual damages. Indeed, such a case would be a remarkable departure from well-established law.

Here, Aerotek has presented evidence from which a jury could reasonably conclude that Moore downloaded Aerotek's business information and breached the Employment Agreement by failing to return it upon leaving Aerotek to join a direct competitor. Aerotek's asserted harm from the alleged breach is the loss of the security of its information and the time and expenses it incurred in trying to find out whether that information was improperly shared or used by Moore or his new employer. Aerotek was also forced to litigate the issue at length before Moore

eventually returned the information (on the USB flash-drive device) to Aerotek. The fact that Moore ultimately returned the information during this litigation is of no consequence to the alleged breach and harm. Thus, the Court finds that Aerotek has standing to assert its claim for breach of contract. And, should it believe Aerotek's version of the facts, the jury would be authorized to award nominal damages and attorney's fees.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff Aerotek Affiliated Services, Inc.'s Motion for Partial Summary Judgment [Doc. 57] and Defendant Alex Moore's Motion for Summary Judgement [Doc. 63] are both **DENIED**.

SO ORDERED, this 22nd day of March, 2024.

William M. Ray II

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE