## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AEROTEK AFFILIATED SERVICES,
INC. F/K/A AEROTEK, INC.,

              Plaintiff,

v.

ALEX MOORE,

              Defendant.

Civil Action No. 1:22-cv-02522-WMR

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff Aerotek Affiliated Services, Inc. f/k/a Aerotek, Inc. ("Aerotek" or "Plaintiff"), by counsel, submits this Memorandum of Law in Support of its Motion *in Limine* pursuant to Section II.l of the Court's Civil Litigation Standing Order and the Federal Rules of Evidence. In its Motion, Aerotek respectfully requests that the Court exclude from the trial of this case evidence of, reference to and/or argument concerning other lawsuits between or among Aerotek and its parent and/or affiliate companies,[1] and third parties.

In his exhibit list in the Consolidated Pretrial Order, Moore has identified, and is expected to seek to admit at trial, pleadings from multiple lawsuits involving Aerotek and its parent and affiliate companies and third-parties. Such evidence

---

[1] Including Allegis Group, Inc., Actalent, Inc., and Aston Carter, Inc.

should be excluded because (1) there is no proffering witness nor requisite foundation for the introduction of such evidence at this trial; (2) different lawsuits in different jurisdictions under different sets of laws with different parties and different claims are not relevant to the issues to be decided by the factfinder in *this* case; (3) if even there is some negligible relevance to other lawsuits, any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the factfinder; and (4) as to pleadings authored by entities distinct from Aerotek, they are hearsay.[2]

## I.   BACKGROUND

### A.   <u>Moore's Former Employment at Aerotek</u>

Moore was an employee of Aerotek, a recruiting and staffing agency, from 2013 until 2021, when he resigned his employment to join Aerotek's direct competitor, Jobot. *See* Doc. 57-2, Excerpts from the Deposition of Alex Moore (hereafter, "Moore Dep."), 26:22-27:2.

At Aerotek, Moore was responsible for interfacing with Aerotek's clients and prospective clients, and servicing and developing Aerotek's business relationships with those clients and prospective clients. *See id.*, 18:18-24, 57:14-22. To that end,

---

[2] Contemporaneously herewith, Aerotek has filed a Motion to Strike Moore's Jury Demand, requesting that this trial be a *bench* trial because Moore knowingly and voluntarily signed an enforceable jury trial waiver. Regardless of whether this trial is before the Court or a jury, however, evidence and argument related to other lawsuits should be excluded.

Aerotek allowed Moore access to Aerotek's password-protected company databases containing Aerotek's valuable confidential and proprietary information about its clients and prospective clients and their needs, Aerotek's sales and business strategies and activities, and various financial metrics. Moore Dep., 21:6-22:19; *see also* Doc. 57-3, Excerpts from the Deposition of Kyle Mitchell (hereafter, "Mitchell Dep."), 170:3-7, 179:15-180:8, 181:4-20.

At the outset of his employment, Moore entered into an Employment Agreement with Aerotek. Moore Dep., 36:12-25; *see also* Employment Agreement (Doc. 57-4). Moore's Employment Agreement contains several provisions related to the confidentiality and security of Aerotek's business information, including Paragraph 7, which required that Moore to return Aerotek's information and other property upon the termination of his employment:

> **7.    RETURN AND PRESERVATION OF RECORDS:** EMPLOYEE agrees, upon termination of EMPLOYEE'S employment with AEROTEK for any reason whatsoever, to return to AEROTEK all records and other property (whether on paper, computer discs or in some other form), copies of records, and papers belonging or pertaining to AEROTEK (collectively "Company Records"). EMPLOYEE further agrees not to engage in the unauthorized destruction or deletion of Company Records during employment or upon termination of employment, including, without limitation, the deletion of electronic files, data, records or e-mails.

Employment Agreement, ¶ 7, at 8.

Moore's Employment Agreement also provides that in the event Aerotek prevails in a lawsuit against Moore for breach of Paragraph 7 (or other provisions),

Aerotek is entitled to recover from Moore its attorneys' fees and expenses. Employment Agreement, ¶ 14, at 11.

**B.** <u>**This Lawsuit**</u>

Just before resigning from Aerotek to join Jobot in September 2021, Moore, without authorization, downloaded numerous files containing Aerotek's sensitive business information from his Aerotek-issued laptop to a personal USB storage device. *See* Moore Dep., 26:22-27:2, 111:10-112:12. Those files contained Aerotek's lists of clients and prospective clients, along with information about those clients and prospective clients used by Aerotek to development business relationships with those companies. *See, e.g.*, Mitchell Dep., 125:13-126:3, 128:13-130:17, 141:2-12; Moore Dep., 174:1-6, 183:13-19, 184:12-16. At summary judgment, Moore did not dispute that he had downloaded and retained those files and that those files contained Aerotek's business information.

Under Paragraph 7 of his Employment Agreement, Moore was required to return Aerotek's files upon termination of his employment. *See* Employment Agreement, ¶ 7, at 8. But Moore admits that he never returned any USB devices or any files to Aerotek. Moore Dep., 191:20-192:2, 214:20-22. Moore admits that the first time he took any action to try to locate, secure and/or return Aerotek's files he had downloaded was around November 2022 – more than *one year* after he left Aerotek and after Aerotek had already responded to Moore's lawsuit. Moore Dep.,

165:19-166:1, 191:24-192:2. That is, after Aerotek raised the issue of the USB devices in its counterclaims in this case, Moore finally searched his house for USB devices and turned over to his attorneys any devices he found. *Id.*, 217:10-25.

As for these proceedings, Moore initiated this lawsuit against Aerotek, claiming he was owed unpaid compensation from his employment. [Doc. 1-1]. Aerotek asserted counterclaims against Moore for breach of contract (including for breach of Paragraph 7) and torts related to Moore's misappropriation of Aerotek's information. [Doc. 5]. Moore ultimately dismissed his claims against Aerotek, and Aerotek dismissed its tort claims against Moore. Now, the *only* claim remaining for trial is Aerotek's claim for breach of contract based on Moore's failure to return Aerotek's information as required by Paragraph 7 of his Employment Agreement. [Doc. 84].

At trial, Aerotek will ask that the factfinder (which Aerotek submits should be the Court and not a jury) determine that Moore breached Paragraph 7 of Employment Agreement by failing to return Aerotek's information and award nominal damages for that breach. After trial and if it prevails, upon post-trial motion under Rule 54, Aerotek will then petition the Court for an award of its attorneys' fees and expenses pursuant to the fee-shifting provision found at Paragraph 14 of the Employment Agreement.[3]

---

[3] Paragraph 14 of Moore's Employment Agreement provides:

### C.    <u>Aerotek's Parent and Affiliate Companies</u>

Moore does not dispute that he took and did not return Aerotek's information, but he seeks to avoid liability for breach of contract by arguing that his employment with Aerotek actually terminated in July 2021, when he claims he became employed by Aerotek's affiliate, Actalent, Inc. ("Actalent"). Moore's theory is that because he downloaded and retained Aerotek's information *after* his employment with Aerotek had already terminated – those downloads occurred on August 17 and 23, 2021 – he contends that his obligation to return Aerotek's information under Paragraph 7 of his Employment Agreement had already lapsed and could not have been breached.

Actalent is an affiliate of Aerotek. Throughout 2021 and into 2022, Aerotek underwent a transition whereby it split into three affiliated recruiting brands – Aerotek, Actalent, and Aston Carter – each with distinct industry focuses. *See* Doc. 72-2, Declaration of Maximo Hermon (hereafter, "Hermon Dec."), ¶ 4; Doc. 72-3, Additional Excerpts from the Deposition of Kyle Mitchell (hereafter, "Add'l Mitchell Dep."), 45:8-12, 157:8-13; Doc. 72-1, Additional Excerpts from the deposition of Alex Moore (hereafter "Add'l Moore Dep."), 63:19-64:5. All three

---

Should AEROTEK sue to enforce this Agreement or to seek damages or injunctive relief for EMPLOYEE'S breach of this Agreement, and AEROTEK is the prevailing part in such suit, AEROTEK shall be entitled to recover its attorneys' fees and costs incurred in connection with such suit.

affiliated brands were wholly-owned subsidiaries of Allegis Group, Inc., which retained complete ownership and control of the three companies. Hermon Dec., ¶ 5.

With the split, Moore was slated to ultimately be assigned to Actalent, but until his resignation, he remained an employee of Aerotek. Hermon Dec., ¶¶ 7-10. In fact, Actalent did not have *any* employees until January 2022, months after Moore had resigned. *Id.*, ¶ 7. Among other things, Moore was always paid by Aerotek, and Aerotek was responsible for payroll taxes on Moore's wages.

After the brand restructuring, the three companies – Aerotek, Actalent, and Aston Carter – remained closely affiliated and shared both clients and financial and client-related information in databases accessible to all three companies. Hermon Dec., ¶ 6; Add'l Mitchell Dep., 168:13-17; 173:9-174:1. While email addresses changed for employees who were slated to be assigned to Actalent, they retained their outward-facing Aerotek email addresses. *Id.*, 26:10-17, 43:2-16.

Actalent was to be dedicated to engineering and science-related recruitment. Add'l Mitchell Dep., 21:14-17, 25:5-11, 129:2-7. Based on his focus at Aerotek, it was intended that ultimately Moore would join Actalent, *see* Add'l Moore Dep., 63:19-64:5; Hermon Dec., ¶ 7, but Moore remained employed by Aerotek, continued to work on placements for clients at Aerotek, and had sales and profits attributed to him coming from Aerotek. Hermon Dec., ¶¶ 7-10; Add'l Mitchell Dep., 129:8-130:7.

Accordingly, while Moore's defensive theory is that his employment with Aerotek terminated in July 2021 when he became affiliated with Actalent, Aerotek will produce ample evidence at trial that Moore was employed by Aerotek during and after he downloaded its information on August 17 and 23, 2021, and he was obligated to return its information when he resigned his employment in September 2021.

### C.    <u>Other Lawsuits Involving Aerotek's Affiliates</u>

Moore is just one of more than ninety-five former employees of Aerotek and its affiliates companies who have been aggressively poached by Jobot, a direct competitor in the recruiting and staffing industry. The poaching of these employees was part of a larger conspiracy by Jobot to improperly acquire Aerotek's and its affiliates' valuable investments in their workforces and to incentivize departing employees to bring with them to Jobot Aerotek and its affiliates' valuable trade secret, confidential and/or proprietary information in order to unfairly compete with Aerotek and its affiliates.

Several lawsuits have arisen from these events, including Aerotek's instant claim against Moore, and claims by Aerotek and its parent and affiliate companies against other former individual employees who, like Moore, sought to

misappropriate Aerotek's trade secret, confidential and/or proprietary information and/or to otherwise breach their restrictive covenants in joining Jobot.[4]

Aerotek and its affiliates have also sued Jobot and two of its executives in the Superior Court for the State of California (where Jobot is headquartered) based on, among other things, their tortious interference with contractual and economic relations, their aiding and abetting departing employees' intentional torts, and their misappropriation of trade secrets (the "California Lawsuit"). In their Complaint in the California Lawsuit (the "California Complaint"), the plaintiffs set out in detail the factual underpinnings for these claims against Jobot. A copy of the California Complaint is attached hereto as **Exhibit A**.

Moore is not a party to the California Lawsuit, the *O'Bryan* case, or any of the other lawsuits involving Aerotek and its parent or affiliate companies, and he is only mentioned twice in the California Complaint as one of *many* employees poached by Jobot under improper circumstances.

---

[4] For example, in the case of *Aerotek Affiliated Services, Inc. v. Kyle O'Bryan*, which pended before this Court, O'Bryan sued Aerotek and then dismissed his claims. Aerotek asserted counterclaims against O'Bryan related to his having sent links to Aerotek's information externally. Ultimately, Aerotek dismissed its claim. In the Consolidated Pretrial Order, Moore has identified certain documents from the *O'Bryan* matter, which should be excluded.

**D.**     **Moore's Seeks to Introduce Evidence of Other Lawsuits at Trial.**

Aerotek suspects that Moore will seek to introduce at trial evidence of or argument about other litigation involving Aerotek and its parent and/or affiliate companies. For example, in his exhibit list in the Consolidated Pretrial Order, Moore identifies the California Complaint and various pleadings from the California Lawsuit (and, as noted, pleadings from the *O'Bryan* lawsuit). By this Motion, Aerotek asks that the California Complaint and pleadings, the *O'Bryan* pleadings, and any other documents from or reference to that lawsuit or any other lawsuits, be excluded.

In addition to trying to portray to the factfinder that Aerotek is a litigious bully, Moore presumably seeks to introduce at trial the California Complaint because, as he argued at summary judgment, he claims Paragraph 65 of the California Complaint supports his contention that his employment with Aerotek terminated in July 2021, before he took Aerotek's information. As detailed below, however, it does nothing to answer that question.

Paragraph 65 of the California Complaint alleges:

Similarly, Former Employee Alex Moore, a former Actalent Sales Manager in Georgia who abruptly resigned his employment on October 1, 2021, after seven (7) years of continuous employment with Actalent and AAS [(Aerotek Affiliated Services, Inc.)], improperly downloaded and left with 45 exported files including a client list and list of prospects.

In reality, Paragraph 65 is of no consequence to Moore's theory that his employment with Aerotek terminated prior to his taking Aerotek's information. First, Paragraph 65 supports only that Moore was *affiliated* with the Actalent brand during his employment, *and Aerotek does not dispute that*. Second, even if Paragraph 65 is interpreted to suggest that Moore was formally *employed* by Actalent, it does not allege that Moore's employment with Aerotek ever terminated. Third, even if Paragraph 65 is interpreted to suggest that Moore's employment with Aerotek *terminated*, it does not allege whether such termination pre-dated Moore's taking Aerotek's information, which is the single narrow factual issue upon which Moore's defensive theory relies.

In addition to the California Complaint, Moore seeks to introduce discovery responses from Actalent in the California Lawsuit. Presumably, he seeks to introduce those documents for their references to Moore being associated with Actalent, like the California Complaint. Not only are those responses hearsay because they are responses of Actalent *not Aerotek* – Moore admits Actalent and Aerotek are distinct entities – they are also without foundation and excludable under Rules 402 and 403, just like the California Complaint.

For the reasons detailed below, the Court should exclude from trial the California Complaint and pleadings and any other lawsuits.

## II.     LAW AND ARGUMENT

### A.     <u>Legal Standard</u>

District courts enjoy wide discretion in ruling on motions *in limine. See, e.g., United States v. Stephens*, 365 F.3d 967, 973 (11th Cir. 2004). A district court's exclusion of evidence on motion *in limine* is reviewed only for abuse of discretion. *United States v. Estrada*, 969 F.3d 1245, 1261 (11th Cir. 2020).

### B.     <u>The Court Should Exclude Evidence of, Reference to, or Argument Concerning Other Lawsuits.</u>

The Court should exclude any evidence of, reference to, or argument concerning other lawsuits involving Aerotek or its parent and/or affiliate companies, including the California Complaint and Lawsuit and the *O'Bryan* complaint, because (1) there is no foundation nor proffering witness for such evidence, (2) such evidence is irrelevant, (3) even if such evidence has *some* relevance (which it does not), it is unfairly prejudice, confusing and misleading, and (4) pleadings not authored by Aerotek are hearsay.

#### 1.     *There is no foundation and no proffering witness for evidence of other lawsuits.*

Evidence of other lawsuits, including the California Complaint and pleadings, are not properly authenticated, are not self-authenticating, and there is no sponsoring witness to provide a proper foundation for such evidence – that is, no disclosed fact witness in this case has any relevant connection to, or personal knowledge about,

those lawsuits.

Under the Federal Rules of Evidence, Moore must authenticate and provide a foundation for any evidence related to other lawsuits, like the California Complaint and other pleadings in the California Lawsuit, in order to introduce that evidence at trial. *See* Fed. R. Evid. 901(a). Some evidence is self-authenticating under Rule 902, but none of those exceptions apply here. *See* Fed. R. Evid. 902 (providing exceptions to requirements of authenticity). Accordingly, Moore must authenticate and provide a foundation for the evidence through the "testimony of a witness *with knowledge*." Fed. R. Evid. 902(b)(1) (italics added). Indeed, a witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Here, Moore has not identified any witnesses in his witness list who can proffer and provide the requisite authentication and foundation for the California Complaint or Lawsuit or other lawsuits involving Aerotek or its parent or affiliate companies. Moore, himself, is not a party to such litigation, and the only witness who was ever asked at deposition about the California Complaint, Reed Schlotthober, had no personal or corporate knowledge about it, either. Neither witness can sponsor the California Complaint. *See United States v. Beasley*, 251 F. App'x 648, 648 (11th Cir. 2007) (finding no adequate foundation laid for press release where witness did not write press release or make statement in press release,

13

and witness never actually read press release until he was asked to do so by defendant's counsel); *see also United States v. Ehmig*, 488 F.2d 1074 (5th Cir. 1973) (finding no requisite evidentiary foundation for admission of signed statement from witness where witness had no recollection of the accuracy of statements therein).

Moreover, Moore never produced the California Complaint in this lawsuit – even though it was responsive to Aerotek's discovery requests – but instead surprised Schlotthober, one of Aerotek's Rule 30(b)(6) corporate designees, with that document at deposition. Relevant excerpts from Schlotthober's deposition are attached hereto as **Exhibit B**. Moore's counsel read to Schlotthober certain allegations from the California Complaint, asking if he saw those allegations in the Complaint displayed in front of him. *See* Schlotthober 81:6-17. Schlotthober answered Moore's counsel stating, "I see what you just read," and "If that is what the document describes, sure. But I'm not a legal expert, so if you're saying that's what it says, I do not know what all of that means." *Id*. 81:20-82:6. Moore's counsel asked Schlotthober about Paragraph 65 and if "it refers to Mr. Moore as a former Actalent sales manager," *id*. 82:7-11, to which Schlotthober responded, "I see that 65 is there, and that is what is in that paragraph." *Id*. 82:7-16. Moore's counsel asked if the conduct of Mr. Moore described in Paragraph 65 is the same conduct at issue in this litigation, to which Schlotthober responded, "I am not – this isn't related. This is a different lawsuit, so I don't feel comfortable, and I don't – I've – should not

respond to anything that's not the Alex Moore or Kyle O'Bryan matters," and "I was not prepared to talk about other lawsuits." *Id*. 83:4-10, 84:18-19. That was the full extent of Schlotthober's testimony about the California Lawsuit or Complaint.[5] Clearly, Schlotthober cannot provide the requisite foundation for introduction of the California Complaint at trial.

Aerotek suspects that Moore may also attempt to ask Maximo Hermon about the California Complaint in his deposition scheduled for April 26, 2024, but Hermon, like Schlotthober, has no knowledge of the California Lawsuit or Complaint and cannot provide a foundation for that evidence.

In short, there is no proper evidentiary foundation or basis by which the California Lawsuit or Complaint, or any evidence relating to other Aerotek lawsuits, can be admitted at trial – including to "show" that Moore's employment with Aerotek was terminated in July 2021, as he theorizes.

### 2.     *Evidence of other lawsuits is irrelevant under Rule 402.*

Even assuming Moore *could* lay the proper evidentiary foundation for evidence of other lawsuits – which he cannot – those lawsuits and their pleadings (including the California Complaint) are irrelevant and therefore inadmissible under

---

[5] To the extent Moore argues that Schlotthober *should have* been able to speak to the California Complaint, Aerotek objected to the any 30(b)(6) topics related to the California Lawsuit, and Moore did not seek testimony specifically related to Moore's employment status.

Rule 402 of the Federal Rules of Evidence.

Under Rule 402, evidence must be relevant to be admissible. *See* Fed. R. Evid. 402. Evidence is only relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401 & 402; *see also Steger v. General Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003).

"[E]vidence of other lawsuits is not normally permitted in jury trials." *Affiliati Network, Inc. v. Wanamaker*, No. 1:16-CV-24097-UU, 2017 WL 8784853, at *5 (S.D. Fla. Aug. 23, 2017) (internal quotations omitted). That is because such evidence is usually found to be irrelevant under Rule 402. *See, e.g.*, *Rushing v. Wells Fargo Bank, N.A.*, No. 8:10-cv-1572-T-24-AEP, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012) ("[E]vidence of other lawsuits is not normally relevant and not permitted"); *Energy Smart Industry, LLC v. Morning View Hotels-Beverly Hills, LLC*, No. 14-cv-23284-UU, 2015 WL 11233085, at *1 (S.D. Fla. June 4, 2015) (granting motion in limine concerning "evidence of Plaintiff's other lawsuits" under Rule 402); *Ward v. Estaleiro Itajai S/A*, No. 05-61821-CIV, 2008 WL 1749475, at *2 (S.D. Fla. Apr. 10, 2008) ("To the extent Plaintiff seeks to exclude evidence of prior litigation, ... her Motion In Limine ... is hereby GRANTED[.]").

Indeed, Eleventh Circuit courts routinely exclude evidence or argument concerning other lawsuits, even where they involve the same parties. *See, e.g.*,

*Affiliati*, 2017 WL 8784853, at *1 (granting Motion to Exclude Evidence of Other Litigation); *Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2009 WL 10687854, at *2 (N.D. Ala. Jan. 17, 2009) (excluding any evidence relating to practices, lawsuits, or other settlements involving other facilities); *Stephens v. Louisville Ladder, Inc.*, No. 806-CV-2299-T-30MSS, 2008 WL 2038397, at *1 (M.D. Fla. May 12, 2008) (granting motion to exclude evidence of other claims or lawsuits); *Custer v. Terex Corp.*, No. CIV.A. 4:02CV0038HLM, 2005 WL 5974434, at *2 (N.D. Ga. May 17, 2005), *aff'd,* 196 F. App'x 733 (11th Cir. 2006) (granting defendant's motion to exclude other lawsuits involving same defendant).

Here, the California Lawsuit and other lawsuits involving Aerotek and its parent and/or affiliate companies are irrelevant under Rule 402 for at least three reasons. First, those proceedings are entirely distinct, with different parties, different laws and facts, and different claims and issues. Moore is but one witness of many in the California Lawsuit, which is filed against Jobot and its executives for their activities in poaching employees. The law and facts applicable to the California Lawsuit are entirely different from this case.

Second, any references to other lawsuits that Moore may seek to rely on at trial (including Paragraph 65 of the California Complaint) are not even informative of the narrow issue in this case for which Moore seeks to use the pleadings. To be admissible, evidence must be "of consequence in determining the action." *See* Fed.

R. Evid. 401(b). As discussed above, Paragraph 65 of the California does not provide the factfinder any information as to whether or not Moore's employment with Aerotek terminated before he downloaded Aerotek's information on August 17 and 23, 2021, or whether it terminated at all. The only thing Paragraph 65 alleges is that Moore was affiliated with Actalent – *and Aerotek does not dispute that fact*.

Third, even if Paragraph 65 is probative, it is not actually *evidence*. Moore seeks to introduce bare allegations from the California Complaint – not deposition testimony or documentary evidence. In *Affiliati Network, Inc. v. Wanamaker*, the Southern District of Florida excluded other lawsuits, finding persuasive the fact that there was no evidence being offered, only allegations. *See Affiliati*, 2017 WL 8784853, at *1. The same is true here, where Moore seeks to take an unadjudicated allegation from a distinct lawsuit and offer it as *proof* in *this* lawsuit.

Here, the allegations that Moore seeks to introduce are of no consequence to the issues before the factfinder. They are mere allegations pulled for an entirely distinct proceeding, and they are not probative of the narrow issue before the factfinder. Such evidence is irrelevant and should be excluded under Rule 402.[6]

---

[6] Similarly, to the extent Moore seeks to admit the California Complaint as purportedly a "prior inconsistent statement" under Rule 613 of the Federal Rules of Evidence, there is no inconsistency. Aerotek's evidence shows that Moore remained an employee of Aerotek through his September 2021 resignation, and Aerotek does not dispute that Moore became affiliated with the Actalent brand. Nothing in the California Complaint contradicts that position.

### 3. If there is any relevance, it is substantially outweighed by prejudice to Aerotek, confusion of the issues, and misleading the factfinder under Rule 403.

Even *if* evidence of other lawsuits could theoretically have some minimal probative value at this trial, and even *if* there was a proper evidentiary foundation for the introduction of such evidence, allowing Moore to introduce such evidence or argument at trial would substantially outweigh any relevance by unfair prejudice, confusion of the issues, and misleading the factfinder.

Under Rule 403, even evidence is relevant, it is still excludable "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. On this basis, Eleventh Circuit courts have excluded evidence of other lawsuits, finding that even if there were some relevance to the evidence, it is outweighed by the dangers enumerated in Rule 403. *See, e.g.*, *Chao*, 2009 WL 10687854, at *1 (excluding evidence of other lawsuits because, even if relevant, it was overly prejudicial).

Here, evidence of the other lawsuits would unfairly prejudice Aerotek because it may imply to the factfinder (as Moore surely intends and has already forecasted in this case) that Aerotek is a litigious bully company needlessly filing lawsuits against a smaller competitive company and employees who left Aerotek. *See Energy Smart Indus.*, 2015 WL 11233085, at *1 (excluding evidence of other lawsuits based on

danger that it might improperly suggest to jury that plaintiff regularly asserts baseless claims). In reality, Aerotek is seeking only to protect its legitimate business interest in its contract rights and against unfair and illegal competition.

Further, bringing in reference to bare allegations in a distinct case with different underlying facts, laws, and jurisdiction would cause Aerotek to have to defend and explain those allegations, delving into specifics of the cases as necessary to provide important context. This creates unnecessary burden on the Court, Aerotek, and the factfinder.

In addition, introduction of other lawsuits would confuse the issues and mislead the factfinder. In addition to the issues noted above, if the case is tried to a jury (to which Aerotek objects), the jury may not appreciate the distinction between the lawsuits – including the differences in parties, jurisdiction, applicable law, claims and issues – nor the fact that these bare allegations in the California Complaint do not actually say what Moore claims they say. It is a generalized, bare allegation, and the jury is likely to assign far more import to that "evidence" than it is worth.

In short, even if the Court finds that evidence of lawsuits involving Aerotek, including the California Lawsuit and Complaint, have *any* relevance, they should nonetheless be excluded under Rule 403.

### 4.  *As to Actalent's discovery responses in the California Lawsuit, they are hearsay.*

As noted, in addition to seeking to introduce the California Complaint, Moore

also seeks to introduce other pleadings in the California Lawsuit, including various discovery responses by co-plaintiff Actalent. Those responses are inadmissible for the same reasons as the California Complaint but also for the additional reason that they are hearsay. That is, they are discovery responses by an entity which Moore admits is entirely distinct from Aerotek, and presumably, Moore seeks to offer them for the truth of the statements therein that Moore was affiliated with Actalent.[7] They should be excluded under Rule 802.

> **5.** **Alternatively, to the extent the Court finds that Paragraph 65 of the California Complaint is relevant and not overly prejudicial, the Court should exclude any reference to the California Lawsuit generally and any other lawsuits involving Aerotek.**

Alternatively, should the Court find that the allegations of Paragraph 65 of the California Complaint *are* relevant and admissible, the Court should still exclude any

---

[7] *See* Fed. R. Evid. 801, 802; *see ADT LLC v. Vivint Smart Home, Inc.*, No. 20-CV-23391, 2023 WL 3568117, at *11 (S.D. Fla. May 19, 2023) ("The Court concludes that the external proceedings such as other lawsuits and investigations are inadmissible hearsay for purposes of ADT urging the truth of the allegations in them, and I therefore exclude evidence of them for that purpose."); s*ee Salinero v. Johnson & Johnson*, No. 1:18-cv-23643, 2019 WL 7753445, at *3 (S.D. Fla. Sept. 25, 2019) ("[I]f [the] [p]laintiffs were to use the existence of other claims or complaints as proof that other women suffered complications ... such evidence would be inadmissible hearsay."); *see also Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 369 n.2 (11th Cir. 2009) (in Fair Housing Act lawsuit, allegations of targeting in another complaint would be inadmissible hearsay because allegations would be offered for their truth); *Bowe v. Public Storage*, No. 1:14-cv-21559, 2015 WL 10857339, at *2 (S.D. Fla. June 2, 2015) (granting motion *in limine* to exclude other lawsuits and any unrelated claims or disputes against the defendant, except for any relevant admissions previously made by defendant or its agents)."

reference to the California Lawsuit, generally, or to any other lawsuits. In other words, the Court should preclude Moore from offering anything beyond the specific allegations contained in Paragraph 65, only, and not permit reference to the California Lawsuit or any other lawsuits involving Aerotek.

## III.   CONCLUSION

For the foregoing reasons, Aerotek respectfully requests that the Court grant Aerotek's Motion *in Limine* and enter an Order excluding from trial any evidence of, reference to, or argument concerning other lawsuits involving Aerotek or its parent and/or affiliate companies, including the California Lawsuit and California Complaint.

Dated:      April 24, 2024

/s/ Jacob S. Gibson
Paul Kennedy (admitted pro hac vice)
pkennedy@littler.com
Littler Mendelson P.C.
815 Connecticut Avenue, N.W.
Suite 400
Washington, DC 20006
Telephone:     202-842-3400
Facsimile:     202-942-0011

Leslie A. Dent, Bar No. 218566
ldent@littler.com
Jacob S. Gibson, Bar No. 178516
jsgibson@littler.com
Littler Mendelson P.C.
3424 Peachtree Road N.E.
Suite 1200
Atlanta, GA  30326.1127
Telephone:     404.233.0330
Facsimile:     404.233.2361

Attorneys for Plaintiff
*Aerotek Affiliated Services, Inc. f/k/a*
*Aerotek, Inc.*

## <u>FONT CERTIFICATION</u>

The undersigned hereby certifies that this pleading complies with the font requirements of LR 5.1B because the document has been prepared in Times New Roman, 14 point.

/s/ Jacob S. Gibson
Jacob S. Gibson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 24th day of April, 2024, the foregoing was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Defendant's counsel of record.

*/s/ Jacob S. Gibson*
Jacob S. Gibson